IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| JUAN SALAZAR,<br><br>        Plaintiff,<br><br>vs.<br><br>CONTINENTAL CONSTRUCTION OF MONTANA, LLC, A&J CONSTRUCTION OF MONTANA, INC., and JOHN DOES A-ZZ,<br><br>        Defendants. | CV 11-16-BLG-CSO<br><br>**ORDER ADDRESSING MOTIONS** |

## I.    INTRODUCTION

Plaintiff Juan Salazar ("Salazar") claims that Defendants Continental Construction of Montana, LLC ("Continental") and A&J Construction of Montana, Inc. ("A&J") failed to provide a safe work environment resulting in his work-related injury. *Fourth Am. Cmplt. (DKT 139).* Salazar, seeking compensatory and punitive damages, asserts the following claims:

1.    Count I – contractual obligation and vicarious liability

2.    Count II – unsafe place to work – negligent retention

1

3. Count III – failure to provide a safe place to work – strict liability and/or negligence per se

4. Count IV – fraud (against A&J only)

5. Count V – constructive fraud (against A&J only), and

6. Common law negligence (unnumbered count)

*Id. at 6-13*.

After the parties filed their written consent, this case was assigned to the undersigned for all purposes. *Notice of Assignment (DKT 37)*. The following motions, listed in the order filed, are now ripe for decision:

1. Salazar's Motion for Partial Summary Judgment as to Element of Duty *(DKT 61)*;

2. Salazar's Motion for Partial Summary Judgment as to Element of Breach *(DKT 65)*;

3. Salazar's Motion for Partial Summary Judgment as to Affirmative Defense of Contributory Negligence *(DKT 67)*;

4. A&J's Motion for Summary Judgment *(DKT 130)*; and

5. A&J's Cross-Motion for Summary Judgment (as to elements of duty and breach) *(DKT 133)*.

The parties filed these motions before Salazar recently amended his complaint. The Court addresses them here because the parties'

arguments remain relevant to claims and affirmative defenses at issue in his Fourth Amended Complaint.

Also, Salazar recently settled his claims against Continental. *DKT 140.* Thus, to the extent any of the foregoing motions relate to Continental, they are now moot and are not addressed here.

Finally, the parties have filed motions in limine that are not yet fully-briefed. The Court will address them by separate order after briefing concludes. Having considered the parties' briefs and submissions respecting the above-listed motions, the Court rules as discussed below.

## II.  BACKGROUND

On June 19, 2008, Salazar fell and was injured while leveling or "plumbing" trusses during his work as a framer on a chalet construction project near Big Sky, Montana. *Salazar's Stmt. of Undisputed Facts (DKT 63) at ¶¶ 1-2 and 11-12*. Continental was the general contractor on the project. *Id. at ¶ 3.* A&J was the subcontractor for framing work on the project. *Id. at ¶ 4; A&J's Stmt. of Undisputed Facts (DKT 132) at 2*. The contract between Continental

3

and A&J contained the following provision:

> 13.   ASSIGNMENT: Supplier [A&J] agrees that it will not assign this Contract, or any of the monies due it, or to become due hereunder, nor sublet any portion of the work without obtaining written consent of Contractor [Continental].

*DKT 132, Ex. 1 (DKT 132-1) at 4.*

A&J subcontracted the framing work to Oscar Cruz Construction ("Oscar Cruz") and Alcaraz Construction ("Alcaraz"). *DKT 132 at ¶ 3.* The parties dispute whether A&J had authority to subcontract the framing work in light of the foregoing assignment provision. Compare *Depo. of Keith Fortin ("Fortin"), Continental's project manager, (DKT 62-3 at 7) at p. 25, ll. 13-16, p. 26, ll. 11-25, p. 27, ll. 1-20* with *Depo. of James Foster, A&J owner, (DKT 63-1 at 4) at p. 97, ll. 7-25, p. 98, ll. 1-25, p. 99, ll. 1-25, p. 100, ll. 1-23.*

Salazar claims that he was an Alcaraz employee while performing framing work on the project. *DKT 139 at ¶ 10.* A&J denies that Salazar was an Alcaraz employee and instead claims that Salazar was an independent contractor at all relevant times. *A&J's Answer to Salazar's Fourth Amended Cmplt. (DKT 164) at ¶ 5.*

4

While plumbing trusses on the project on June 19, 2008, Salazar fell from a height of approximately 20 to 22 feet. He landed on his head and sustained injuries. *DKT 139 at ¶ 13; DKT 164 at ¶ 8*. He filed this action on February 17, 2011. *Cmplt. (DKT 1)*.

### III.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11.  Again, the opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

    To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.  DISCUSSION

As noted above, the parties have filed five separate summary judgment motions. Their arguments supporting and opposing the

various motions often overlap.  The Court therefore addresses the motions together.

Salazar first seeks partial summary judgment that A&J had a duty to provide him a safe workplace *(DKT 61)* and that A&J breached its duty violating the Montana Safety Act, MCA § 50-71-201  *(DKT 65).*  See *Salazar's Br. Supporting Mtn. for Partial Summary Judgment as to Element of Duty  (DKT 62) at 17-18* and *Salazar's Br. Supporting Mtn. for Partial Summary Judgment as to Element of Breach (DKT 66) at 9-10.*  Salazar argues that: (1) when injured, he was engaged in an inherently dangerous activity; (2) A&J retained actual control over him and his work; and (3) under contracts between A&J and its subcontractors, which employed Salazar, A&J owed him a duty which A&J breached.  *DKT 62 at 6-17.*

A&J responds and also moves for summary judgment that it did not owe a duty and is not liable for any of Salazar's claims.  *A&J's Mtn. for Summary Judgment (DKT 130); A&J's Cross Mtn. for Summary Judgment [as to Elements of Duty and Breach] (DKT 133).*  A&J argues that Salazar was not an employee protected by the Safety Act but

9

rather was an independent contractor not covered under the Act. *A&J's Resp. Br. and Br. Supporting Cross-Mtn. for Summary Judgment (DKT 134) at 4, 6, 9-15*. A&J also argues that even if Salazar was subcontractor Alcaraz's employee, the general rule is that contractors are not liable for the torts of their subcontractors, and no exception to the rule applies here. *A&J's Br. Supporting Mtn. for Summary Judgment and Resp. to Pltf's Mtns. for Summary Judgement (DKT 131) at 4-23*.

The Court concludes that genuine issues of material fact preclude summary judgment on any of the grounds advanced by the parties. In its Order granting Salazar's motion to add an expert handwriting analyst, the Court noted that Salazar has presented evidence that documents purporting to show he was an independent contractor may have been forged. *DKT 163 at 4-7*. A&J denies this and maintains that Salazar held a valid Independent Contractor Certificate based on submission of documents bearing his signature. This dispute alone precludes summary judgment on whether Salazar was an employee or an independent contractor and, consequently, precludes summary

judgment on the issues raised.  *Gonzales v. Walchuk*, 59 P.3d 377, 382 (Mont. 2002) (holding that presumption that issuance of a Certificate of Independent Contractor Exemption is conclusive as to status of an independent contractor "presupposes that the applicant knowingly and voluntarily completes and submits the application[ ]" and "does not survive in the face of proof that the Certificate was obtained by fraud."); see also *Porter v. Galarneau*, 911 P.3d 1143, 1151 (Mont. 1996) (genuine issues of material fact on nature of painter's employment status on claim against homeowner under Safety Act).

Also, the parties have presented conflicting evidence respecting whether A&J retained actual control over safety at the project.  For instance, Salazar has presented evidence that no one at Continental knew about or approved A&J's subcontracting the framing to Oscar Cruz and Alcaraz.  *Depo. of Keith Fortin ("Fortin"), Continental's project manager, (DKT 62-3) at p. 25, ll. 13-16, p. 26, ll. 11-25, p. 27, ll. 1-20.* Other evidence suggests that Fortin, Continental's project manager, knew A&J and some individuals who worked with A&J.  Those individuals happened to be affiliated with Oscar Cruz and Alcaraz from

a previous job. Fortin sought them out to work on the framing part of the project where Salazar was injured. From the evidence, one might draw the inference that Fortin thought the individuals were actually affiliated with A&J and that their use on the project did not violate A&J's contract with Continental. *Depo. of James Foster, A&J owner, (DKT 63-1) at p. 97, ll. 7-25, p. 98, ll. 1-25, p. 99, ll. 1-25, p. 100, ll. 1-23.*

Also, Fortin testified that he, as Continental's project manager, had sufficient authority at the site to stop any workers from performing an unsafe act if he thought doing so was appropriate. *DKT 62-3, p. 62, ll. 5-22.* A&J owner James Foster testified that Kirk Cecil, A&J's superintendent at the project, along with "other people", was in charge of safety issues on the work site. *DKT 63-1 at p. 16, ll. 1-23.* It being impossible at this juncture to ascertain clearly from the record who had control over safety at the project, summary judgment is precluded.

In addition, there is conflicting evidence respecting contractual control over safety at the project. On one hand, A&J's contracts with Oscar Cruz and Alcaraz contain terms that provide that A&J retained

overall control over safety at the project site.  *See, e.g., DKT 62-2 at 6 (¶ 21) and DKT 132-3 at 6 (¶ 21).*  On the other hand, the same contract terms appear to place responsibility for safety on the subcontractor.  *Id*.  At this juncture, the record is not sufficiently developed to allow the Court to enter summary judgment.

Salazar also separately moves for summary judgment that A&J's contributory negligence affirmative defense is unavailable.  *DKT 67*.  Salazar argues that: (1) because he was working at a height of 22 feet, he was exposed to a hazard; (2) he had no reasonable means or opportunity to avoid working from this height without endangering his employment; and (3) he would be exposed to the subject hazard even if fall protection had been in place.  *Salazar's Br. Supporting Mtn. for Partial Summary Judgment as to Affirmative Defense of Contributory Negligence (DKT 68) at 3-10*.  Because of these facts, Salazar argues, contributory negligence is unavailable as an affirmative defense.

A&J responds that: (1) Salazar was not exposed to a hazard; (2) even if Salazar was exposed to a hazard, he had the means to avoid it without endangering his employment; and (3) any harm to which

Salazar was exposed "was not caused by anything that A&J did or did not do." *A&J's Br. Supporting Mtn. for Summary Judgment & Resp. to Salazar's Mtn. (DKT 131) at 6-18* and *A&J's Br. in Opposition to Salazar's Mtn. for Summary Judgment as to Contributory Negligence Affirmative Defense (DKT 135) at 4-5*. Thus, A&J argues, the Court should deny Salazar's summary judgment motion respecting its contributory negligence affirmative defense.

> Under Montana law,
>
> Contributory negligence remains available as a defense to a defendant who has been found to have breached its nondelegable duty to provide a safe working environment if evidence demonstrates that:
>
>> (1) the worker has some reasonable means or opportunity to avoid the hazard without endangering his or her employment; or
>>
>> (2) the subject harm was not a reasonably foreseeable consequence of the contractor's breach of the nondelegable safety duty.

*Olson v. Shumaker Trucking and Excavating Contractors, Inc.*, 196 P.3d 1265, 1277 (Mont. 2008) (citations omitted; formatting added).

The Court concludes that genuine issues of material fact preclude summary judgment on this issue. As noted above, fact issues

surrounding whether Salazar was an employee or an independent contractor preclude summary judgment respecting duty and breach. The unresolved issue of whether A&J breached a nondelegable duty to provide a safe working environment, in turn, precludes summary judgment on the availability of the contributory negligence affirmative defense under the above authority.

In addition, conflicting evidence prohibits the Court from deciding whether Salazar had some reasonable means or opportunity to avoid the hazard without endangering his employment. For example, some evidence suggests that fall protection equipment was available to Salazar at the site and that he knew how to use it. *Depo. of Juan Salazar (DKT 132-4 at 2) p. 26, ll. 16-25, p. 27, ll. 6-9.* Other evidence suggests, however, that he was unable or reluctant to take the time to use the equipment because he was instructed by his supervisor to go quickly to the work area, which prevented him from wearing a protective harness. *Id., p. 27, ll. 9-10, 15-16, p. 28, ll. 10-16*; see also *Depo. of Ever Lozano (DKT 156-1 at 3), p. 12, ll. 18-24.*

Finally, some evidence suggests that Salazar's employment would

have been endangered had he not gone quickly to where his boss wanted him to work.  *Salazar Depo., DKT 132-4at 3, p. 30, ll. 21-24, p. 31, ll. 2-12.*  But other evidence contradicts this.  *Depo. of Wilson Hernandez (DKT 132-4 at 9), p. 10, ll. 8-23.*

Because of the foregoing genuine issues of material fact, summary judgment is precluded on the availability of contributory negligence as an affirmative defense.

## V.     <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that:

1. Salazar's Motion for Partial Summary Judgment as to Element of Duty *(DKT 61)* is DENIED;

2. Salazar's Motion for Partial Summary Judgment as to Element of Breach *(DKT 65)* is DENIED;

3. Salazar's Motion for Partial Summary Judgment as to Affirmative Defense of Contributory Negligence *(DKT 67)* is DENIED;

4. A&J's Motion for Summary Judgment *(DKT 130)* is DENIED; and

5. A&J's Cross-Motion for Summary Judgment (as to elements of duty and breach) *(DKT 133)* is DENIED.

DATED this 3rd day of August, 2012.

<u>/s/ Carolyn S. Ostby</u>
United States Magistrate Judge