IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| JUAN SALAZAR, | CV 11-16-BLG-CSO |
| Plaintiff, | |
| | ORDER ADDRESSING |
| vs. | MOTIONS IN LIMINE |
| A&J CONSTRUCTION OF MONTANA, INC., | |
| Defendant. | |

This Order addresses the parties' motions in limine and a recently-filed motion to strike a supplemental expert report. *See DKTs 143, 145, 147, 149, 151, 152, 179, and 221.*

## I.   BACKGROUND

The parties are familiar with the underlying facts and their arguments related to each motion. The Court will recite such facts and arguments only as necessary to explain its rulings.

## II.   LEGAL STANDARD

In *BNSF Railway Co. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010) (Cebull, C.J.), this Court described

the legal standard for motions in limine.  Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. Judges have broad discretion when ruling on motions in limine.  *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  But a motion in limine should not be used to resolve fact disputes or weigh evidence. *C & E Services, Inc., v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds."  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio  2004); *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008); *Wilkins v. K-Mart Corp.*, 487 F.Supp.2d 1216, 1218-19 (D. Kan. 2007).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of

evidence." *Wilkins*, 487 F.Supp.2d at 1219.

It is settled law that rulings on motions in limine are provisional. Such "rulings are not binding on the trial judge [who] may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.'" *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d at 846.

With these general standards in mind, the Court addresses below each pending motion in limine and the motion to strike.

## III.   DISCUSSION

### A.   A&J's Motion in Limine Re: Exclusion of Evidence of James and Diane Foster's Personal Assets

The Court will grant this motion. A&J seeks exclusion of "evidence of James and Diane Foster's personal assets and 2005 bankruptcy filing." *DKT 143*. James and Diane Foster, although principals of A&J, are not parties to this action. Salazar has offered

neither evidence nor persuasive argument that would allow him to reach the Foster's personal assets should he prevail on his claims against A&J.  Thus, at this juncture, their personal assets are irrelevant to any claim or defense at issue and would not tend to make a fact more or less probable than without such evidence.  Fed. R. Evid. 401.  In the course of trial, should Salazar choose to attempt to introduce such evidence, his counsel must make an offer of proof outside of the jury's presence before attempting to introduce any such evidence and before making any reference to it.

### B.   A&J's Motion in Limine Re: Exclusion of Opinion Evidence by Salazar's Expert John Macdonald

The Court will grant this motion.  A&J seeks exclusion of three opinions by John Macdonald ("Macdonald"), Salazar's safety expert, respecting: (1) immigration law; (2) whether Salazar's fall and injury were caused by his Hispanic descent; and (3) whether Salazar was an independent contractor or employee under Montana law.  *A&J's Mtn. Re: Macdonald's Opinion (DKT 145) at 2.*

## 1.    <u>Expert Witness Legal Standard</u>

Federal Rule of Evidence 702, governing receipt of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires that the trial court act as a "gatekeeper" by excluding evidence that does not meet standards of reliability and relevance. The Supreme Court articulated general guidelines for Rule 702's application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* focused on scientific testimony. *Kumho* held that *Daubert's* principles apply to "technical and other specialized

knowledge" as well.  *Kumho*, 526 U.S. at 141.  In *Kumho*, 526 U.S. at

149, the Supreme Court held that if an expert testimony's "factual

basis, data, principles, methods, or their application are called

sufficiently into question, ... the trial judge must determine whether

the testimony has a reliable basis in the knowledge and experience of

[the relevant] discipline."

The Ninth Circuit has held that the admissibility of expert

opinion testimony generally turns on the following preliminary legal

determinations by the trial judge:

> • Whether the opinion is based on scientific, technical, or other
> specialized knowledge;
> • Whether the expert's opinion would assist the trier of fact in
> understanding the evidence or determining a fact in issue;
> • Whether the expert has appropriate qualifications-i.e., some
> special knowledge, skill, experience, training or education on that
> subject matter;
> • Whether the testimony is relevant and reliable;
> • Whether the methodology or technique the expert uses "fits" the
> conclusions (the expert's credibility is for the jury);
> • Whether its probative value is substantially outweighed by the
> risk of unfair prejudice, confusion of issues, or undue consumption
> of time.

*United States v.  Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citations

omitted).  The *Hankey* court explained that "not only must the trial

court be given broad discretion to decide *whether* to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability.' " *Id.* (emphasis in original) (citing *Kumho*, 119 S.Ct. at 1176).

A *Daubert* hearing is not required before ruling on a motion to exclude expert testimony. *See United States v. Lopez-Martinez*, 543 F.3d 509, 514 (2008) (finding that a hearing is not required under Supreme Court precedent or Ninth Circuit case law). The Court determines here that the parties have thoroughly briefed the issues and presented sufficient materials to allow the Court to reach a determination without a *Daubert* hearing.

## 2. <u>Analysis</u>

First, the Court will grant A&J's motion to the extent it seeks to prohibit Macdonald from rendering any opinions about immigration law. Neither Macdonald's final expert witness report nor anything else presently in the record establishes his expertise to render such an opinion. *DKT 160-1 at 3-11.* Any opinion he may render about immigration law would be unreliable. Also, it is the Court's duty, not

the duty of an expert witness, to instruct the jury on the law. *United States v. Vreeken*, 803 F.3d 1085, 1091 (10th Cir. 1986). There is no basis for Macdonald to testify regarding immigration law.

Second, the Court will grant A&J's motion to the extent it seeks to prohibit Macdonald from testifying about whether Salazar fell because of his Hispanic descent. Salazar notes in his response to A&J's motion that Macdonald does not intend to testify that Salazar fell because of his Hispanic descent and notes that "[t]he statement that Juan Salazar fell because of his Hispanic descent is outrageous." *Salazar's Resp. Br. (DKT 160) at 5*. He argues that Macdonald never made the statement in his expert report or deposition. *Id*. Because there is no dispute that Macdonald is not going to testify that Salazar's Hispanic descent caused him to fall, the Court will grant A&J's motion to the extent it seeks to exclude such testimony.

Third, the Court will grant A&J's motion to the extent it seeks to preclude Macdonald from rendering an opinion about whether Salazar was an independent contractor or an employee under Montana law. As with the above discussion concerning whether Macdonald may testify

respecting immigration law, there is no basis in the record for
Macdonald to testify about whether Salazar was an independent
contractor or an employee under Montana law.

Finally, the Court notes that its ruling on this motion is limited to
the precise subjects discussed above. In contesting A&J's motion,
Salazar asks the Court to allow Macdonald to testify concerning: (1)
"the heightened danger associated with undocumented immigrants
working on a construction site[,]" *DKT 160 at 6*; (2) "what Jay Foster,
owner of A&J, should have known as an employer[,]" *id.*; (3) whether
Foster should have obtained immigration forms to confirm the
citizenship status of all employees on the construction site, *id.*; and (4)
Salazar's status as an employee on the construction site if the Court
first finds that Salazar was an independent contractor, *id. at 5-6*.

The Court declines to rule at this juncture on the admissibility of
Macdonald's testimony concerning the issues Salazar proposes. In line
with the authority detailed above, at this point in the proceedings the
Court cannot determine specifically how, or even if, Macdonald will
attempt to testify concerning the issues identified above. Thus, the

Court will deny Salazar's pretrial request that it rule that Macdonald

may testify as to those specific issues.

### C. A&J's Motion in Limine Re: Exclusion of Opinions of Economist Stan Smith and Salazar's Motion in Limine to Exclude Testimony of Anne Arrington

The Court will deny these motions.  The parties have filed what

may be characterized as cross-motions in limine to exclude one

another's damages expert witnesses.  A&J seeks exclusion of the expert

opinions of Salazar's economist, Stan Smith ("Smith"), respecting: (1)

past lost wages; (2) future damages including: (a) future wages, (b)

replacement of household family services, (c) family housekeeping, (d)

household/family advice, counseling, guidance, instruction, and training

services, and (e) household/family accompaniment services; (3) cost of

future life care; (4) reduction in value of life; and (5) damages for

Salazar's wife and children.  *A&J's Mtn. (DKT 147)* and *A&J's Br. in

Support (DKT 148) at 3-9.*  Salazar seeks exclusion of the testimony of

vocational consultant Anne Arrington.  *Salazar's Mtn. in Limine (DKT

151) at 2-6.*

The Court concludes that the current record does not permit it to

rule on the admissibility of Smith's and Arrington's opinions.  The admissibility of their opinions hinges, at least in part, on fact issues in dispute involving Salazar's present and future status in this country as well as his past and future employment status.  Without a more developed record, the Court cannot determine the admissibility of either Smith's or Arrington's opinions.  The parties may make any appropriate objections at trial.

### D.   A&J's Motion in Limine Re: A&J/Continental Contract

The Court will deny this motion.  A&J seeks to exclude "any mention of whether or not A&J had a right to assign any part of its contractual rights to subcontractor Alcaraz or any one else."  *A&J's Mtn. Re: A&J/Continental Contract (DKT 149) at 1.*  A&J argues that such evidence is irrelevant and that any probative value it may have is outweighed by unfair prejudice.  A&J also argues that such evidence would confuse and mislead the jury.  *Id. at 1-2*; *A&J's Br. in Support (DKT 150) at 1-4.*

Rule 401, Fed. R. Evid., provides:

Evidence is relevant if:

> (a)   it has any tendency to make a fact more or less
>        probable than it would be without the evidence; and
>
> (b)   the fact is of consequence in determining the action.

Rule 401's plain language does not require that relevant evidence be absolutely determinative of a fact, claim, or defense in an action, as A&J seems to suggest.  Rather, the rule states that relevant evidence is that which has "any tendency" to increase or decrease the probability of a fact "of consequence in determining the action."  Fed. R. Evid. 401.

"If evidence is relevant, it is generally admissible under Federal Rule of Evidence 402."  *McCollough v. Johnson, Rodenburg & Louinger, LLC*, 637 F.2d 939, 953 (9th Cir. 2011) (citing *United States v. Curtain*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc)).  The Court may exclude relevant evidence, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  *Id.* (citing Fed. R. Evid. 403).

Here, the Court cannot conclude at this juncture that the evidence that A&J seeks to exclude is irrelevant.  Whether A&J breached its contract with Continental by subcontracting its work to others without Continental's written consent may be relevant to Salazar's claim that

-12-

A&J failed to provide a safe place to work.  A&J argues in its reply brief that "A&J subcontracted with Alcaraz.  The record is devoid of A&J having anything to do with Alcaraz's hiring/contracting process or participated in it in anyway."  *A&J's Reply Br. (DKT 178) at 7.*  A&J's act of subcontracting with Alcaraz in violation of its contract with Continental, and apparent omission in failing to participate in any way with Alcaraz in hiring or contracting workers, could, for example, tend to affect the probability of whether A&J provided a safe work site.  The evidence may be relevant on this basis alone and the Court need not now address Salazar's argument that the evidence is also relevant to his claims of fraud and constructive fraud.

Also, with respect to whether the probative value of the evidence is outweighed by unfair prejudice to A&J, the Court concludes that all of the purposes for which the evidence may be offered are unknown at this time.  Thus, the Court is unable to perform the Rule 403 balancing.  In this Court's opinion, the admissibility of the evidence at issue here can be determined only in the context of the purpose for which it is being offered.  Thus, at this point, the Court cannot rule on the

evidence's admissibility.  The Court, therefore, will deny A&J's motion in limine.  A&J may make any appropriate objection to introduction of the evidence at trial.

### E.    Salazar's Motions in Limine

Salazar has filed a motion in limine with six subparts, which the Court addresses seriatim below.

#### 1.    Motion to Exclude Testimony of Ann Arrington

The Court addressed this motion supra in conjunction with A&J's motion to exclude testimony from Stan Smith.

#### 2.    Motion to Exclude Testimony of Wendell D. Rust

The Court will deny this portion of Salazar's motion.  Salazar seeks to exclude testimony from A&J's construction and OSHA expert, Wendell D. Rust ("Rust") respecting: (1) Rust's opinion "that Alcaraz is the only employer who is obligated to provide a safe worksite[,]" *DKT 151, at 7-8*; (2) any of Rust's testimony that "fails to include the 'vicarious liability' of A&J Construction as a basis for [Rust's] opinion[,]" *id.*; and (3) Rust's opinion "relating to the multi-employer worksite[,]" *id.*

Having considered the parties' arguments, the Court concludes that, on the current record, it cannot grant this portion of Salazar's motion.  Without the benefit of a more developed record, the Court cannot conclude at this juncture that Rust's challenged opinions should be excluded.  It is clear from the parties' submissions that the relevance of at least some of Rust's opinions depends upon whether Salazar is deemed an employee or an independent contractor – a determination that has not yet been made.  Also, while it appears that at least some of Rust's opinions rendered in his expert report are legal conclusions, it is not clear how or whether he will attempt to present them during his trial testimony.  The Court will deny Salazar's pretrial motion to the extent it seeks exclusion of Rust's testimony, leaving open to Salazar the opportunity to make appropriate objections at trial.

### 3.  Motion to Exclude Comments on Potential Effect or Impact of this Litigation or Any Adverse Verdict on A&J or on A&J's Agents

The Court will grant this portion of Salazar's motion.  Salazar seeks to exclude evidence of the potential effect or impact of this litigation or any adverse verdict on A&J or its agents.  *DKT 151 at 9-*

*10.*  In response, A&J "stipulates that no such evidence will be introduced[ ]" but adds that "this stipulation is conditional on the Court's order in limine being reciprocal[ ]" such that "Salazar should be prohibited from commenting on the potential negative effect or impact this litigation or an adverse verdict will have on Salazar." *DKT 167 at 16*.

The Court will grant Salazar's motion for two reasons.  First, A&J represents that it will not introduce the type of evidence Salazar seeks to exclude.  Thus, A&J has no basis to object to Salazar's motion. Second, the condition A&J places on its stipulation not to introduce such evidence is not reasonable.  To require a plaintiff seeking damages in a personal injury lawsuit to refrain from introducing evidence of the effect of the litigation or negative impact he will suffer if he does not prevail is tantamount to precluding the plaintiff from introducing evidence of his injury and damages.  The Court will grant this portion of Salazar's motion.

### 4.   Motion to Exclude Collateral Source Evidence

The Court will grant this portion of Salazar's motion.  Salazar

seeks exclusion of any evidence that he obtained any benefit from collateral sources, including settlement with other parties, health insurance, public or private disability benefits, and workers' compensation benefits. *DKT 151 at 10-12*.

In response, A&J states that the only collateral source evidence that it intends to introduce is of Salazar's receipt of workers' compensation benefits. *DKT 167 at 16*. Thus, the Court will grant Salazar's motion to the extent it seeks to exclude every other form of collateral source evidence.

Respecting receipt of workers' compensation benefits, the Court will also grant this portion of Salazar's motion but will provide A&J the opportunity, if it wishes, to attempt to introduce such evidence through a proper showing, as discussed below. Introduction of such collateral source evidence is generally precluded. See, e.g., *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 37 (1963) (concluding collateral benefits evidence was inadmissible but recognizing in proper case an appropriate instruction would cure error); see also *Sheehy v. Southern Pacific Transportation Co.*, 631 F.2d 649, 651-52 (9th Cir. 1980);

*Mickelson v. Montana Rail Link*, 999 P.2d 985, 992 (Mont. 2000).

Here, A&J argues that Salazar "has waived his right to have ruled inadmissible the facts involving his Worker's Compensation claim[ ]" because: (1) A&J contends that Salazar was an independent contractor subjecting his claims to dismissal; (2) evidence exists in the record that Salazar persuaded Alcaraz to list him as an employee after his fall so that he could obtain workers' compensation benefits; (3) A&J contends that Salazar is feigning his current claimed injuries; (4) A&J contends that Salazar's counsel "was instrumental in getting Salazar's primary physician to ... render Salazar totally disabled[ ]" after an earlier determination that his injuries were less severe; (5) Salazar has not previously objected to mention of workers' compensation benefits despite issues about it being raised in discovery; and (6) Salazar alleges in his Fourth Amended Complaint that evidence of his status as an employee is indicated by the Montana State Fund's acceptance of his workers' compensation claim.  *DKT 167 at 17-19*.

At this juncture, the Court concludes that the best approach, given the prejudicial nature of such collateral source evidence, is to

preclude it.  In the course of trial, should A&J choose to attempt to

introduce such evidence, its counsel must make an offer of proof outside

of the jury's presence before attempting to introduce any such evidence

and before making any reference to it.

> **5.    Motion to Exclude Discussion, Inference, or
> Attribution of Blame or Responsibility to Any
> Person or Entity Against Whom No Claim is
> Pending at Time of Trial**

The Court will grant this portion of Salazar's motion in part and

deny it in part.  Salazar seeks exclusion of any evidence "attempting to

place fault on individuals or entities who are no longer parties to this

action or are not parties to this action at the time of trial."  *DKT 151 at*

*12*.  A&J responds that it "is not going to attribute responsibility to

Continental Construction."  *DKT 167 at 20*.  Thus, the Court will grant

this portion of Salazar's motion to the extent it seeks exclusion of any

evidence attempting to place fault for Salazar's injury on Continental

Construction.

To the extent Salazar seeks exclusion of evidence of fault on the

part of any other individual or entity not a party to this action at the

time of trial, the Court will deny his motion.  At this juncture, without

the benefit of a more fully developed record, the Court is unable to rule
on the admissibility of such evidence.  Whether it is admissible at trial
depends, at least in part, on the purpose for which it is being
introduced and on what claims and defenses remain at issue.  For these
reasons, the Court will deny this portion of Salazar's motion.  Salazar
may make any appropriate objection to introduction of the evidence at
trial.

### 6.   Motion to Exclude Medical Opinions Lacking Foundation

The Court will grant this portion of Salazar's motion.  Salazar
seeks exclusion of any medical evidence offered without adequate
foundation and any medical opinion not based on a "reasonable medical
probability."  *DKT 151 at 14*.  A&J responds that it "intends to
introduce and have admitted testimony and other evidence showing
that Salazar's medical experts did not reach their conclusions based
upon reasonable medical probability."  *DKT 167 at 21*.  But it also
states that it "agrees that neither party should introduce for their own
benefit medical 'facts' that are not based on that standard."  *Id*.
(emphasis omitted).

Because the parties agree that any medical evidence offered without adequate foundation and any medical opinion not based on a "reasonable medical probability" should be excluded, the Court will grant this portion of Salazar's motion.  The Court notes, however, that this motion in limine is unnecessary because appropriate objections to such testimony can be made at trial.

### F.   A&J's Motion in Limine Re: Exclusion of Opinion on Future Medical Treatment

The Court will deny this motion.  A&J seeks exclusion of certain opinions by three of Salazar's expert witnesses respecting future medical care.  *A&J's Mtn. (DKT 152).*

A&J argues that medical experts David L. Reinhard, M.D. ("Reinhard") and Bill Rosen, M.D. ("Rosen"), and rehabilitation counselor Reg Gibbs, MS ("Gibbs"), "only surmise that certain future medical treatment will be needed[ ]" by Salazar.  *A&J's Br. (DKT 153) at 1-2.*  A&J argues that Reinhard testified at his deposition that it was only "possible" that Salazar, in the future, would need: "(1) a sleep study; (2) comprehensive brain injury treatment program; (3) neuropsychological testing; (3) [sic] family practice and neurology; (4)

vocational counseling; (5) rehabilitation program; and (6) treatment for injuries." *Id. at 2.*

A&J argues that because Reinhard did not state his opinion respecting future medical treatment "to a reasonable degree of medical certainty" but "merely speculated that future medical care was a possibility[,]" the Court "should prohibit Salazar from offering Reinhard as an expert on his future medical costs." *Id. at 2-3.* Also, A&J argues that Reinhard based his opinions on reports by Rosen and Gibbs, both of whom "only recommended future medical treatment and [who did not render their opinions] to a reasonable degree of certainty that the future medical treatment would be necessary." *Id. at 2.*

Salazar responds that A&J incorrectly represents both that Reinhard testified that Salazar's future medical treatment is only "possibly" necessary and that he did not state his opinions to a reasonable degree of medical certainty. *Salazar's Resp. Br. (DKT 161) at 2.* He also argues that Reinhard did not base his opinions on reports by Rosen and Gibbs. *Id.* Rather, Salazar argues, Reinhard stated at the beginning of his deposition that his opinions were offered to a

reasonable degree of medical certainty or on a more-likely-than-not basis and that A&J did not object.  He also argues that Reinhard based his medical opinions on his treatment of Salazar over more than a three-year period, not on reports by Rosen and Gibbs.  *Id. at 2-3*.

As an initial matter, the Court notes that the deposition excerpts that Salazar quotes in arguing that Reinhard testified that his opinions were offered to a reasonable degree of medical certainty or on a more-likely-than-not basis do not match the deposition excerpts that he attached to his response brief.  Compare *DKT 161 at 5-6* with *DKT 161-5 at 3-5*.  But the deposition excerpts nevertheless support his position that Reinhard understood that he was rendering his opinions on a more-likely-than-not basis.  See *DKT 161-5 at 3 (deposition pages 6-7)*.  Again, A&J did not object to Reinhard testifying to this standard at his deposition.  This deposition testimony is sufficient for the Court to deny A&J's motion.

Also, A&J failed to object to this standard in its reply brief supporting the instant motion.  Instead, A&J argues only that Reinhard did not state that each of the six items of future treatment

-23-

listed above were "certainly needed" – only that they were possibly needed.  *A&J's Reply Br. (DKT 176) at 2.*

The Court is not persuaded by A&J's argument.  Although jurisdiction of this action is based on diversity, the Federal Rules of Evidence control the admissibility of evidence.  See *Wright & Miller, Federal Practice and Procedure:  Civil 2d § 2405.*  Federal courts may, however, look to state law for guidance.  *Chapman v. Mazda Motor of America, Inc.*, 7 F.Supp.2d 1123, 1128 (D. Mont. 1998).  The Montana Supreme Court recently emphasized that the "reasonable degree of medical certainty" and "more probable than not" standards of evaluating medical testimony should not be applied as mechanically as A&J urges here.  *Ford v. Sentry Casualty Co.*, 282 P.3d 687, ¶ 41 (Mont. 2012).  The supreme court noted that it has "adhered to the proposition that 'a medical expert's opinion is admissible if it is based on an opinion that it is 'more likely than not[,]' " a "standard [that] assures that the expert testimony or opinion 'does not represent mere conjecture, but rather is sufficiently probative to be reliable.' " *Id.* (citations omitted). The supreme court explained its position on the standard as follows:

> [W]e cannot control how doctors phrase their opinions and
> testimony on these issues, and we do not purport to do so
> here. ... [T]here may be cases in which a doctor states his or
> her opinion in terms of 'a reasonable degree of medical
> certainty' or fails to state that his or her opinion is on a
> 'more probable than not' basis.  Nevertheless, the probative
> force of the opinion 'is not to be defeated by semantics if it is
> reasonably apparent that the doctor intends to signify a
> probability supported by some rational basis.  Doctors are
> not lawyers and may on occasion phrase medical opinions in
> medical, rather than legal, terminology.

*Id.* at ¶ 42 (citations omitted).

As the parties have presented their arguments respecting the
instant motion, the Court cannot conclude at this point that Reinhard's
opinion is inadmissible.  As noted above, it appears he rendered his
opinion on a more-probable-than-not or similar basis and A&J did not
object.  Also, the parties' briefs lack sufficient argument respecting the
opinions of Rosen and Gibbs for the Court to properly address the
motion to the extent that it seeks to exclude their testimony.  Thus, the
Court will deny A&J's motion.

### G.   A&J's Motion in Limine Re: Exclusion of Testimony of Salazar's Handwriting Expert, Wendy Carlson

The Court will deny this motion.  A&J seeks exclusion of the
testimony of Salazar's handwriting expert, Wendy Carlson ("Carlson"),

arguing that her expert report is inadequate under Federal Rule of Civil Procedure 26. *A&J's Mtn. Re: Carlson's Testimony (DKT 179).* A&J argues that the Court should exclude Carlson as a witness because her expert report fails to comply with Rule 26(a)(2)(B)(I) and (iii)'s requirements that the report: (1) set forth the basis and reasons for her opinions; and (2) identifies the exhibits that will be presented during her testimony. *A&J's Br. (DKT 180) at 6, 8-11.*

In response, Salazar argues that Carlson's initial report complied with Rule 26, but he nevertheless has provided a supplemental report from Carlson that addresses deficiencies that A&J argues existed in the initial report. *Salazar's Resp. (DKT 201) at 3-6.* Thus, Salazar argues, A&J's motion is now moot. *Id.*

In reply, A&J argues that: (1) Carlson's initial report is insufficient to meet Rule 26's requirements for the reasons already stated in her opening brief; (2) Carlson's supplemental report should be stricken; and (3) the Court should exclude Carlson from testifying at trial. *A&J's Reply Br. (DKT 220) at 3-4.*; see also *A&J's Mtn. to Strike Carlson's Supplemental Report (DKT 221)* and *Supporting Brief (DKT*

*222*) (incorporating by reference arguments from A&J's Reply Br. Supporting Mtn. in Limine to Exclude Carlson).

Federal Rule of Civil Procedure 26(a)(1)(A)(I) provides that a party must disclose to other parties

> the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]

Fed. R. Civ. P. 26(a)(1)(A)(i).

Respecting disclosure of expert witnesses and relevant to the motion at hand, Rule 26(a)(2) provides:

> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

>        *       *       *
>
> (iii) any exhibits that will be used to summarize
> or support them;
>
>        *       *       *

Fed. R. Civ. P. 26(a)(2)(A) and (B).

Parties are obligated to supplement expert disclosures under Rule

26(e)(2), which provides:

> For an expert whose report must be disclosed under Rule
> 26(a)(2)(B), the party's duty to supplement extends both to
> information included in the report and to information given
> during the expert's deposition.  Any additions or changes to
> this information must be disclosed by the time the party's
> pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).  Rule 26(a)(3) provides that "[u]nless the court

orders otherwise, these disclosures must be made at least 30 days

before trial."  Fed. R. Civ. P. 26(a)(3)(B).

The parties are well aware that: (1) on July 11, 2012, the Court

issued an Order granting Salazar's motion to amend his complaint,

past the deadline for doing so, to add fraud and constructive fraud

claims, *DKT 138*; (2) on July 12, 2012, Salazar filed his Fourth

Amended Complaint, *DKT 139*; (3) on July 30, 2012, the Court issued

an Order granting Salazar's motion for leave to add Carlson as an expert witness, past the deadline for doing so, as a supplement to his previous expert witness disclosure, *DKT 163*; (4) on August 23, 2012, Salazar filed a notice of the filing of Carlson's supplemental expert witness report, *DKT 202*; and (5) on August 28, 2012, the Court and counsel participated in a status conference (*DKT 216*) that resulted in the Court's Order resetting the jury trial of this matter from September 10, 2012, to November 26, 2012, *DKT 217*.  Thus, as the schedule of this matter now stands, the jury trial is set to commence in slightly less than 11 weeks.

The Court has carefully reviewed Carlson's initial expert report and agrees with A&J that it fails to comply with Rule 26(a)(2)(B)(i)'s requirement that the report set forth the basis and reasons for her opinions.  The Court disagrees with A&J, however, that the report fails to comply with Rule 26(a)(2)(B)(iii)'s requirement that it identify the exhibits that will be presented during Carlson's testimony.  It is apparent that the documents that Carlson identifies in her report as "K1" through "K11" and "Q1" through "Q4" are the documents that

likely will be presented during her testimony.

With respect to the report's failure to set forth the basis and reasons for Carlson's opinions, the Court concludes that Carlson's supplemental report cures that deficiency. See *DKT 201-1 at 35-44*. The remaining question, then, is whether Salazar timely submitted Carlson's supplemental expert report.

The duty to "supplement" a disclosure "in a timely manner" is intended "to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence." *William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1258 (2011) (citing *ATD Corp. v. Lydall*, 159 F.3d 534, 550-51 (Fed. Cir. 1998) (excluding patent evidence first disclosed long after close of discovery)). This Court has stated:

> The duty to supplement is not an opportunity to add to information which should have been disclosed initially under Rule 26(a). *See Keener v. USA*, 181 F.R.D. 639 (D. Mont. 1998). Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Id.* at 640; *see also Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc.*, 1993 WL 129781, n.18 (E.D. Cal. 1993) (plaintiff precluded from using supplementation "as a

vehicle to allege new theories or contentions after the close
of discovery").

*Erickson v. Ford Motor Co.*, 2007 WL 5527512, at *6 (D. Mont., 2007).

Applying this authority to the case at hand, the Court concludes
that Salazar's submission of Carlson's supplemental report was made
"in a timely manner."  First, as noted above, this case's schedule was
altered when the Court granted Salazar leave to amend his complaint
to add claims for fraud and constructive fraud.  The Court already has
determined that Salazar acted diligently and with good cause in
seeking leave both to amend his complaint and to modify the
scheduling order to supplement his liability expert disclosures.  *DKT
163 at 4-7*.  These changes to the schedule necessarily altered some
deadlines related to the newly asserted claims.

Second, Carlson's supplemental expert report does not advance
new opinions or alter opinions that she rendered in her initial report.
Although her methodologies were known to her at the time she made
her initial report, their inclusion in the supplemental report does not
change the basic premise of her opinion in such a way as to work
prejudice to A&J.

-31-

Third, even if it were to find that Salazar did not submit Carlson's supplemental report in a timely manner, the Court would still conclude that she should not be excluded from testifying on that basis.  Fed. R. Civ. P. 37(c)(1) "gives teeth" to Rule 26(a)'s initial disclosure requirements and Rule 26(e)'s requirement that parties timely supplement incomplete or incorrect discovery responses.  *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (applying rule in Rule 26(a)(2) violation context) (quoting *Yeti by Molly Ltd.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  The rule provides a variety of remedies, including excluding evidence, requiring payment of expenses and fees caused by the failure to supplement, informing the jury of the party's failure to comply, or imposing "other appropriate sanctions[.]"  Rule 37(c)(1).  The rule "is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure."  *Goodman*, 644 F.3d at 827 (citing *Yeti by Molly*, 259 F.3d at 1106 and Rule 37 advisory committee's note (1993)).

No sanction is warranted, however, where it is found that noncompliance with Rule 26 was "substantially justified" or "harmless."

-32-

Rule 37(c)(1); *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing *Yeti by Molly*, 259 F.3d at 1106). Factors courts may consider in determining whether a failure to timely supplement is substantially "justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Durham v. County of Maui*, 2011 WL 2532690, at *4 (D. Hawai'i, June 23, 2011) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (unpublished) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 2010 WL 4591596, at *7 (N.D. Cal., Nov. 3, 2010). The party facing sanctions bears the burden of proving substantial justification or harmlessness. *Goodman*, 644 F.3d at 827 (citing *Yeti by Molly*, 259 F.3d at 1106); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 781 (6th Cir. 2003).

Here, the Court concludes that Salazar's submission of Carlson's supplemental report, even if untimely, was harmless. First, there is

not unfair prejudice or surprise to A&J that cannot be cured.  Trial of this matter is set to commence more than 10 weeks hence.   A&J has ample time to depose Carlson and to retain its own expert should it choose to do so.

Second, no trial disruption is expected.  As the parties are aware, the Court, at the parties' urging, has extended the number of trial days from five to eight in light of the case's complexity and the parties' stated need for additional time.  *DKT 217*.  Because of this extension of the trial time, the Court was compelled to move the trial more than two months out.  Allowing Carlson's testimony will not disrupt the trial.

Third, there has been no showing that Salazar acted in bad faith or with willfulness in submitting Carlson's supplemental expert report.

For all of these reasons, the Court will deny A&J's motion in limine to exclude Carlson's testimony.  As a result of this ruling, and for the reasons already stated, the Court further concludes that A&J's motion to strike Carlson's supplemental expert report (*DKT 221*) is moot.  Also in light of this ruling, the Court will impose upon A&J a deadline of October 26, 2012, to file its own handwriting expert's

report, should it choose to do so.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, IT IS ORDERED that:

1.   A&J's Motion in Limine Re: Exclusion of Evidence of James and Diane Foster's Personal Assets (*DKT 143*) is GRANTED.

2.   A&J's Motion in Limine Re: Exclusion of Opinion Evidence by Plaintiff's Expert John Macdonald (*DKT 145*) is GRANTED.

3.   A&J's Motion in Limine Re: Exclusion of Opinions of Economist Stan Smith (*DKT 147*) is DENIED.

4.   A&J's Motion in Limine Re: A&J/Continental Contract (*DKT 149*) is DENIED.

5.   Respecting Salazar's Motions in Limine (*DKT 151*), the Court rules as follows:

   a.   Motion to Exclude Testimony of Ann Arrington is DENIED.

   b.   Motion to Exclude Testimony of Wendell D. Rust is DENIED.

   c.   Motion to Exclude Comments on Potential Effect or Impact of this Litigation or Any Adverse Verdict on A&J or on A&J's Agents is GRANTED.

   d.   Motion to Exclude Collateral Source Evidence is GRANTED.

   e.   Motion to Exclude Discussion, Inference, or Attribution of Blame or Responsibility to Any Person or Entity Against Whom No Claim is Pending at Time of Trial is GRANTED in part and DENIED in part as set forth herein.

      f.      Motion to Exclude Medical Opinions Lacking Foundation is GRANTED.

6.      A&J's Motion in Limine Re: Exclusion of Opinion on Future Medical Treatment (*DKT 152*) is DENIED.

7.      A&J's Motion in Limine: Request for Rule 37(c)(1) Order Excluding the Testimony of Plaintiff's Handwriting Expert Wendy Carlson (*DKT 179*) is DENIED.

8.      A&J's Motion to Strike Carlson's Supplemental Report (*DKT 221*) is DENIED as moot.

9.      A&J shall have to and including October 26, 2012, to file its own handwriting expert report, should it choose to do so.

DATED this 17th day of September, 2012.

<u>/s/ Carolyn S. Ostby</u>
United States Magistrate Judge